**Vern KISSINGER, Jr., Appellant
(Plaintiff Below),**

v.

**Paul SHOEMAKER, Appellee
(Defendant Below).**

**No. 3–381A63.**

Court of Appeals of Indiana,
Third District.

Aug. 31, 1981.

James O. Wells, Jr., Rochester, for appellant.

William H. Deniston, Ted A. Waggoner, Rochester, for appellee.

HOFFMAN, Presiding Judge.

This is an appeal from a denial of a petition for a writ of habeas corpus filed by a natural father for the return of his children who were being detained by their stepfather.

The marriage of Vern Kissinger, Jr. and Virginia Kissinger was dissolved September 4, 1979. The three minor children born of their marriage were placed in the custody of Virginia. Virginia married Paul Shoe-

maker on July 5, 1980, and twelve days later, on July 17, 1980, she met an untimely death in a tractor accident.

On August 6, 1980 Vern Kissinger filed his petition for a writ of habeas corpus which was heard on August 8, 1980. Originally the action was filed under the cause number of the Kissinger dissolution. At approximately the same time, Paul Shoemaker filed a petition for temporary and permanent custody of the children under the same cause number. At the hearing, it was determined that Kissinger's petition should be filed under a separate cause number and such action was taken at that time. Since the defendant's attorney was unaware that the trial court intended to hear both petitions on that day and was only prepared to respond to the habeas corpus petition, the causes were separated and the trial court proceeded to hear evidence on Kissinger's petition for a writ of habeas corpus only. Kissinger's petition was denied by the trial court on September 18, 1980 and Kissinger appealed.

The issue Kissinger raises on appeal is whether the trial court erred in denying his petition for a writ of habeas corpus. Kissinger contends that when a parent, who is granted custody of the children in a dissolution decree, dies, custody of the children automatically inures to the surviving parent.

As authority for his position, Kissinger cites *State ex rel. Gregory v. Superior Court etc.* (1961), 242 Ind. 42, 176 N.E.2d 126 and *In re Guardianship of Phillips* (1978), Ind.App., 383 N.E.2d 1056. It should be noted that *Phillips* dealt with a petition for guardianship and was not a habeas corpus action. In both cases cited by Kissinger the surviving parent was granted custody of the minor children.

However, both *Gregory* and *Phillips* also hasten to point out that the surviving parent prevailed in the absence of any showing that they were unsuitable to be entrusted with the children.

■ The evidence in the case at hand leads us to a different conclusion. The disposition of children is not controlled by hard and fast rules of law, but by the sound judicial discretion of the trial court, and the review by an appellate court is limited to the question of abuse of judicial discretion. *Gilchrist v. Gilchrist* (1947), 225 Ind. 367, 75 N.E.2d 417. No such abuse has been shown here.

■ Ordinarily, a parent is entitled to the custody of his or her child against third parties. However, the rights of parents are not absolute and must yield to the welfare and best interest of the child. *Gilchrist, supra.*

The reasoning set forth in the case of *Hendrickson v. Binkley* (1974), 161 Ind.App. 388, 316 N.E.2d 376, *cert. denied* 423 U.S. 868, 96 S.Ct. 131, 46 L.Ed.2d 98, seems applicable to the cause before us. *Hendrickson* involved a habeas corpus proceeding wherein a father sought to recover custody of his child over the maternal grandparent. The trial court entered a judgment in favor of the grandparent and the father appealed. This Court held that although the child had been awarded to his mother at the time of divorce, where the child had not been voluntarily relinquished to others, and the evidence did not disclose unfitness, long acquiescence or voluntary relinquishment by the father, the presumption that it was in the best interests of the child to be placed in the custody of the surviving parent was not rebutted, and the father was entitled to custody over the maternal grandparent. While *Hendrickson* dealt with *both* the habeas corpus issue and the issue of custody, it is still helpful in determining the sole issue before us which relates only to a habeas corpus action.

■ *Hendrickson* outlines a three-step approach. First, it is presumed it will be in the best interests of the child to be placed in the custody of the natural parent. However, this is a rebuttable presumption. Therefore, secondly, to rebut this presumption, it must be shown that there is, (a) unfitness, (b) long acquiescence, or (c) voluntary relinquishment such that the affections of the child and third party have become so interwoven that to sever them

would seriously mar and endanger the future happiness of the child. The third step is that upon a showing of one of these above three factors, then it will be in the best interests of the child to be placed with the third party. *Hendrickson, supra,* 316 N.E.2d at 380.

In denying Kissinger's petition, the trial court necessarily found the presumption in favor of Kissinger as the natural father had been sufficiently rebutted by the evidence. In addition to the testimony given at trial, the trial court ordered and received a report of a home study on Vern Kissinger by the Cass County Department of Public Welfare.

 The question of whether the evidence was sufficient to rebut the presumption in Vern Kissinger's favor as the natural parent was a question of fact for the trial court to determine. The evidence was before the trial court, and it was in the best position to weigh that evidence and judge the credibility of the witnesses. That task is not one for this Court. *D. H. v. J. H.* (1981), Ind.App., 418 N.E.2d 286.

Since custody of the children was granted to Virginia in the dissolution decree, it cannot be argued that Vern Kissinger voluntarily relinquished his children to the third party involved here. *Hendrickson, supra.* Likewise, since less than one month passed from the time of Virginia's death until Kissinger filed his petition, a long acquiescence was not shown. However, the evidence considered in its entirety is sufficient to establish that Kissinger was unfit.

By Kissinger's own testimony, it was established that he had paid no child support for his children since his divorce, even though the dissolution decree did provide for support. Kissinger admitted he was aware that he was granted visitation rights in the decree, however several witnesses testified that he had not visited the children in over a year or had any communication with them. Kissinger's employment history was questionable in that he had had approximately nine different jobs in the past twelve years. Another consideration was

the possible inadequacy of Kissinger's living arrangement in terms of caring for the children. Evidence of prior mistreatment of the children by Kissinger was introduced. Two witnesses testified that on August 2, 1980 only four days prior to the filing of his petition, Kissinger stated he did not want to keep his children, but was interested only in seeing them. This evidence is sufficient to support the conclusion of the trial court.

The third step in the *Hendrickson* test need not be reached by this Court, since our task is solely to review the habeas corpus action. Whether it is in the best interests of the children to be placed with the third party is a matter to be decided in a custody proceeding.

Having found no reversible error, the judgment of the trial court is affirmed.

Affirmed.

GARRARD and STATON, JJ., concur.