Dwight MURDOCK, Appellant,

v.

ESTATE OF Sharron K. MURDOCK, Appellee.

No. 45A03–0912–CV–585.

Court of Appeals of Indiana.

Oct. 12, 2010.

Judy M. Tyrrell, Tabbert Hahn Earnest & Weddle LLP, Indianapolis, IN, Attorney for Appellant.

Debra Lynch Dubovich, Levy & Dubovich, Highland, IN, Kent A. Jeffirs, Crown Point, IN, Attorneys for Appellee.

## OPINION

BAILEY, Judge.

### Case Summary

Pursuant to Indiana Appellate Rule 14(A), Dwight Murdock ("Dwight") appeals an interlocutory order of the Lake Superior Court, Probate Division, declaring that an enforceable contract was created by a property settlement document drafted in a dissolution action between Dwight and Sharron Murdock ("Sharron"), which action was pending at the time of Sharron's death. We reverse and remand.

### Issue

Dwight presents the single issue of whether the probate court erred by recognizing the property settlement document as a contract enforceable in probate proceedings.

### Facts and Procedural History

Dwight and Sharron were married on December 13, 1969. On October 5, 2007, Dwight petitioned the Lake Superior Court to dissolve the marriage. On November 1, 2007, Sharron filed a cross-petition for dissolution. The parties were ordered to mediate their property division disputes. After mediation failed, the parties' respective attorneys continued to negotiate and draft settlement documents.

On April 28, 2008, Sharron died intestate. At that time, there existed a property settlement document that had been signed by Dwight. Also, Dwight's and Sharron's attorneys had each signed below the designation "Approved as to Form." (App.54.) Sharron had, in a telephonic consultation with her attorney, expressed an intention to sign the document, but did not, in fact, examine it or sign it before her death. Thus, the signature lines for Sharron and for the dissolution court remained blank.

Dwight was initially appointed the personal representative of Sharron's estate. Subsequently, two of the parties' five adult children, Stacy Murdock ("Stacy") and Michelle Murdock ("Michelle"), petitioned for Dwight's removal as personal representative, asserting that he was not an "interested person" in Sharron's estate, having forfeited his rights pursuant to Indiana probate statutes addressing adultery and

spousal abandonment.[1]

On October 14, 2008, Stacy and Michelle were appointed co-representatives of their mother's estate and the probate court "deferred for hearing" a Petition to Determine Heirs "including any issues as to the effect, if any, of the pending action for dissolution of marriage, claims of adultery under I.C. 29–1–2–14 and claims of abandonment under I.C. 29–1–2–15." (App.28.) On October 28, 2008, the probate court conducted a hearing at which the Estate asserted that the property settlement document was an enforceable contract and Dwight asserted that it was a nullity.

On October 21, 2009, the probate court conducted a final hearing on the issue of enforceability. At that hearing, Sharron's attorney, Jill Swope, testified that she had explained the settlement terms to Sharron and Sharron had expressed her intention of signing the document. Also, the probate court admitted into evidence an affidavit from Sharron's attorney, expressing her professional opinion that the property settlement document "was to become effective upon its execution, and was not contingent on any Court approval." (App.33.) Swope also averred that Sharron had authorized her to sign and "bind" Sharron to the agreement. (App.33.)

On November 3, 2009, the probate court issued an order adjudicating the property settlement document to be enforceable, finding the issue of abandonment moot, and "reserving final judgment" as to whether Dwight had forfeited the right to inherit from Sharron's estate. (App.13.) Dwight pursued an interlocutory appeal as of right asserting that the probate court order effectively required him to deliver property and execute documents;[2] the Estate moved to dismiss the appeal. On July 2, 2010, this Court denied the motion to dismiss and this appeal proceeded.

### Discussion and Decision

#### I. Standard of Review

Whether a set of facts establishes a contract is a question of law. *Batchelor v. Batchelor*, 853 N.E.2d 162, 165 (Ind.Ct. App.2006). We review a question of law under a de novo standard and owe no deference to a trial court's legal conclusions. *Coffman v. Olson & Co.*, 906 N.E.2d 201, 207 (Ind.Ct.App.2009), *trans. denied.*

#### II. Analysis

Parties to a dissolution action may craft an agreement providing for the disposition of their marital property pursuant to Indiana Code Section 31–15–2–17, which provides:

(a) To promote the amicable settlements of disputes that have arisen or may arise between the parties to a marriage attendant upon the dissolution of their

---

1. *See* Ind.Code § 29–1–2–14 (providing "If either a husband or wife shall have left the other and shall be living at the time of his or her death in adultery, he or she as the case may be shall take no part of the estate or trust of the deceased husband or wife."); Ind.Code § 29–1–2–15 (providing "If a person shall abandon his or her spouse without just cause, he or she shall take no part of his or her estate or trust.").

2. Indiana Appellate Rule 14(A) provides in relevant part:

Appeals from the following interlocutory orders are taken as a matter of right by filing a Notice of Appeal with the trial court clerk within thirty (30) days of the entry of the interlocutory order:

(1) For the payment of money;

(2) To compel the execution of any document;

(3) To compel the delivery or assignment of any securities, evidence of debt, documents or things in action;

(4) For the sale or delivery of the possession of real property[.]

marriage, the parties may agree in writing to provisions for:

(1) the maintenance of either of the parties;

(2) the disposition of any property owned by either or both of the parties; and

(3) the custody and support of the children of the parties.

(b) In an action for dissolution of marriage:

(1) the terms of the agreement, if approved by the court, shall be incorporated and merged into the decree and the parties shall be ordered to perform the terms; or

(2) the court may make provisions for:

(A) the disposition of property;

(B) child support;

(C) maintenance; and

(D) custody;

as provided in this title.

(c) The disposition of property settled by an agreement described in subsection (a) and incorporated and merged into the decree is not subject to subsequent modification by the court, except as the agreement prescribes or the parties subsequently consent.

"*Settlement agreements become binding contracts when incorporated into the dissolution decree* and are interpreted according to the general rules for contract construction." *Bailey v. Mann*, 895 N.E.2d 1215, 1217 (Ind.2008) (emphasis added.) Here, the agreement document was not incorporated into a dissolution decree.

■ Moreover, due to the death of a party, no dissolution decree was forthcoming. Dissolution proceedings, including property settlement matters, terminate upon the death of one of the parties. *See Johnson v. Johnson*, 653 N.E.2d 512, 516 (Ind.Ct.App.1995) (opining that "the legislature did not intend for trial courts to retain jurisdiction over dissolution actions following the death of one of the parties for the purpose of resolving property matters between the parties and their successors in interest").

Three exceptions have been recognized. In *State ex rel. Smith v. Delaware County Superior Court*, 442 N.E.2d 978, 980 (Ind. 1982), our Supreme Court allowed a surviving spouse to seek modification of a property settlement after the decree was entered and after her husband died based on the deceased husband's fraudulent underreporting of his assets to the court. In *State ex rel. Paxton v. Porter Superior Court*, 467 N.E.2d 1205, 1207 (Ind.1984), the Court clarified that the death of a party ended the dissolution proceedings, but allowed the deceased spouse's attorney to recoup from the surviving spouse fees and expenses incurred in preparing the divorce case. Finally, in *Lizak v. Schultz*, 496 N.E.2d 40, 43 (Ind.1986), the Court recognized an exception in order to permit the deceased spouse's estate to have child support arrearages reduced to a judgment by the dissolution court following the entry of the decree of dissolution. The Estate does not contend that the instant circumstances present a recognized exception such that the dissolution court retained jurisdiction to resolve a property settlement matter.

As we have previously stated: "The decree of dissolution is the only vehicle available to distribute marital assets ... [w]ithout a final decree, there can be no property settlement." *Johnson*, 653 N.E.2d at 516. The Estate nonetheless has requested that the probate court, using the property settlement document as a template, recognize a contract derived from the "intent" of the parties. According to the Estate, the probate court could "give full force and effect to an agreement voluntarily entered into between a decedent and her estranged husband when

that agreement was already in effect at the time the decedent passed away." Appellee's Brief at 25.

We find the argument unavailing. First, the property settlement document is silent as to its operation in the event of death. It contained no terminology directed toward binding heirs and assigns. It was drafted in contemplation of a divorce and also in contemplation of further orders to third parties to effect the actual division. Even as Swope testified that the property settlement document provisions were "meant to take effect upon signature," she also opined that some terms could not "actually be carried out at this point." (Tr. 139, 141.) She explained that the document contemplated qualified domestic relations orders ("QDRO") for the division of pension funds and an annuity and she didn't believe that a QDRO "would be honored" if issued after death. (Tr. 141.)

Second, an attempt to enforce the provisions of the property settlement document—which had neither been fully executed nor adopted by the dissolution court—based upon a determination of "intent" would contravene our Indiana Supreme Court's directive that marital property settlement agreements become binding when incorporated into the dissolution decree. *See Bailey*, 895 N.E.2d at 1217.

Accordingly, we reverse the order for enforcement of the marital property settlement document, including its provision that the issue of abandonment is moot, and remand for further proceedings on the issue of Dwight's alleged forfeiture of the right to inherit from Sharron's estate.

Reversed and remanded.

RILEY, J., and KIRSCH, J., concur.